UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APPLIED ENERGETICS, INC., a Delaware Corporation, | COMPLAINT |
| Plaintiff, | Civil Action No. |
| vs. | Related Action: Civil Action No. 1:19-CV-06200-at (DCF) |
| GUSRAE KAPLAN NUSBAUM PLLC, and RYAN WHALEN, | |
| Defendants. | Jury Trial Demanded |

## JURISDICTION

1. The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. section 1332(a)(3) because it involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper in this district pursuant 28 U.S.C. § 1391(b)(1) because Gusrae Kaplan Nusbaum PLLC and Ryan Whalen are both residents of New York and reside in the Southern District of New York.

## SUMMARY

3. This case concerns the malpractice and breach of New York Rules of Professional Conduct by Gusrae Kaplan Nusbaum PLLC ("GKN") and Ryan Whalen ("Whalen") in their representation of Applied Energetics, Inc. ("AE") in early 2018. GKN/Whalen were hired in 2017 by AE's former principal executive office and sole director, George Farley ("Farley"), to represent Farley individually in a shareholder derivative lawsuit filed against him in the Delaware Court of Chancery, *Superius Securities Group, Inc. et al. v. George Farley et al.*, Case No. 2017-0024 (the "Superius Litigation"). In the Superius Litigation, AE shareholders accused Farley of, *inter alia*, breaching his fiduciary duties owed to AE by issuing himself 25 million AE shares for par value, $0.001 per share. The

shareholder plaintiffs who filed the Superius Litigation eventually voluntarily dismissed the lawsuit without prejudice.  As a result of such voluntary dismissal, and pursuant to section 145(c)(1) of the General Corporation Law of the State of Delaware (the "DGCL") and AE's bylaws, Farley was entitled to indemnification by AE for reasonable legal fees and expenses he incurred in successfully defending the Superius Litigation.

4.  In January 2018, after the Superius Litigation was dismissed without prejudice, a different group of AE shareholders filed proxy solicitation materials with the Securities and Exchange Commission ("SEC") seeking to remove Farley as a director of AE.  The proxy solicitation materials explained that shareholders ought to vote to remove Farley for cause *for the exact same conduct alleged in the Superius Litigation*.  In response, Farley, acting in his capacity as sole director and officer of AE, hired GKN and Whalen to represent *AE* in connection with the proxy solicitation.

5.  In agreeing to represent AE, and therefore represent AE's separate and distinct interests from the personal interests of their existing and/or former client, Farley, GKN/Whalen failed to comply with New York's Rules of Professional Conduct ("NYRPC").  Specifically, in violation of NYRPC 1.7, GKN/Whalen did not advise AE of their conflicts of interest in representing AE in a situation where AE's interests were adverse to the interests of another client, Farley, to whom GKN/Whalen owed continuing duties of loyalty and confidentiality under NYRPC 1.9.  In violation of NYRPC 1.7, GKN/Whalen did not obtain the written consent to these conflicts from AE.  Notably, even if Farley – acting as the sole officer, director, representative of AE – purported to give signed consent to GKN/Whalen's conflicts, because Farley himself was conflicted in the representation, his consent could not have waived the conflict.  NYRPC 1.13(d).

6.  Moreover, at the time GKN/Whalen agreed to represent AE, AE is informed and believes and thereon alleges GKN/Whalen had not been paid by Farley or AE for GKN/Whalen's representation of Farley in the Superius Litigation.  GKN/Whalen commenced their representation of AE on or about January 19, 2018.  Shortly thereafter, GKN/Whalen

negotiated with Farley to be paid in AE stock in lieu of cash for the fees incurred in defending Farley in the Superius Litigation *and* for fees incurred thus far in their representation of AE in the proxy solicitation matter.  This business transaction with a current client was not subject to the exemption from NYRPC 1.8 for ordinary fee arrangements between a client and a lawyer because the transaction occurred after GKN/Whalen had already agreed to represent AE and had already performed services for AE, and because the agreement involved the lawyer accepting an interest in the client's business.  Comment 4C to NYRPC 1.8 states, in relevant part:  "This Rule also does not apply to ordinary fee arrangements between client and lawyer reached at the inception of the client-lawyer relationship, which are governed by Rule 1.5. The requirements of the Rule ordinarily must be met, however, when the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of the lawyer's fee."

7. Farley, GKN, and Whalen agreed that 100% of GKN's billings in defending Farley in the Superius Litigation were "reasonably incurred" and thus AE was obligated to compensate GKN for these fees.  However, GKN and Whalen would have known that Farley's agreement that 100% of GKN's claimed fees were "reasonably incurred" was conflicted. Furthermore, Farley, GKN, and Whalen agreed upon a 50% discount to the public trading price of AE's stock as of January 23, 2018, and that the shares would be subject to a restrictive legend.  As a result, on or about January 24, 2018, Farley sent a letter to Continental Stock Transfer & Trust Company instructing it to issue 1,242,710 shares to GKN (745,626) and Whalen (497,084).  Even though GKN/Whalen were entering into a business transaction with a current client subject to NYRPC 1.8, at no time did GKN/Whalen advise AE in writing to seek independent counsel in reviewing the propriety of the stock issuance, advise AE of the several conflicts of interest such stock ownership would create, and AE's consent was not obtained to waive such conflicts. GKN/Whalen did not advise AE in writing of the role they were playing, if any, in negotiating and/or documenting the stock-for-fees transaction.  Further, GKN/Whalen did

not seek an independent valuation of the AE shares to ensure such transaction was fair and reasonable to AE.

8. As demonstrated herein, these acts constituted legal malpractice, and a violation of NYRPC rules 1.8, 1.7, and 1.5.  Such violations allow AE to rescind its contract with GKN and Whalen for its issuance of AE stock as payment for legal services rendered. AE elected to rescind the contract and notified GKN/Whalen of this rescission via letter on June 24, 2019.  GKN/Whalen did not honor this rescission election and instead sued AE, all its officers and directors, its attorneys, and a consultant.  See Gusrae Kaplan Nusbaum PLLC et al. v. Applied Energetics, Inc. et al., No. 1:19-cv-06200 (SDNY) (DCF) (the "Related Action").

## PARTIES

9. Plaintiff AE is a corporation organized under the laws of the State of Delaware with its principal place of business in Tuscan, Arizona.

10. Defendant GKN is a law firm with its principal place of business in New York County, New York.

11. Upon information and belief, there are four members of Defendant GKN: Martin H. Kaplan, Scott H. Goldstein, Lawrence G. Nusbaum III, and Defendant Whalen.

12. Upon information and belief, Mr. Kaplan, Mr. Goldstein, Mr. Nusbaum, and Defendant Whalen all reside in, and are citizens of, the State of New York.

13. Upon information and belief, none of the members of Defendant GKN resides in or is a citizen of the states of Delaware or Arizona.

## STATEMENT OF FACTS

**A. GKN Retained by Farley to Defend Farley Against Derivative Lawsuit Brought by AE Shareholders in Superius Litigation**

14. On January 13, 2017, certain AE shareholders filed their initial complaint in the Superius Litigation.

15. Farley retained GKN/Whalen to represent him individually in defending the Superius Litigation.

16. Whalen, as a member of GKN, appeared *pro hac vice* in the Delaware Court of Chancery to represent Farley in the Superius Litigation.

17. The Superius Litigation was eventually voluntarily dismissed without prejudice on July 24, 2017.

18. As a result of the voluntary dismissal, under DGCL section 145(c)(1), Farley was entitled to indemnification by AE for his attorney's fees actually and reasonably incurred in defending against the Superius Litigation.

19. According to GKN, the fees and expenses incurred in defending Farley in the Superius Litigation was $33,324.26.  A true and correct copy of the bill GKN sent to AE is attached hereto as Exhibit A.  Although AE has asked for the detailed billing statements showing the work and hours spent, GKN/Whalen have not provided AE with any more detailed billing statements than Exhibit A.

20. Because GKN did not send any billing statements with descriptions or work performed or hours spent in their representation of Farley, AE is unable to determine whether these claimed fees were "reasonably incurred."  Farley, as the recipient of the services to be indemnified by AE, was not in a position to independently determine whether these claimed fees were "reasonably incurred" and had a conflict of interest in any such determination he might make.

**B.  AE Shareholders Initiate Proxy Solicitation to Remove Farley as Director of AE**

21. On or about January 18, 2018, a group of AE shareholders formally initiated a proxy solicitation to remove Farley as director of AE by filing a Preliminary Consent Solicitation Statement Schedule 14A with the SEC.

22. Bradford T. Adamczyk, Jonathan R. Barcklow, Thomas C. Dearmin, John E. Schultz, Jr. and Oak Tree Asset Management Ltd., each an AE shareholder, were the listed proponents of the Preliminary Consent Solicitation Statement Schedule 14A.  A true and

correct copy of the January 18, 2018 Preliminary Consent Statement is attached hereto as Exhibit B.

23. On January 29, 2018, Bradford T. Adamczyk, Jonathan R. Barcklow, Thomas C. Dearmin, John E. Schultz Jr., and Oak Tree Management Ltd filed a Revised Preliminary Proxy Statement with the SEC.  A true and correct copy of the Revised Preliminary Proxy Statement is attached hereto as Exhibit C.

24.  On February 2, 2018, Bradford T. Adamczyck, Jonathan R. Barcklow, Thomas C. Dearmin, John E. Schultz Jr., and Oak Tree Asset Management Ltd filed a Definitive Consent Statement Pursuant to Schedule 14A of the Securities Exchange Act of 1934 with the SEC.  A true and correct copy of the Definitive Consent Statement is attached hereto as Exhibit D.

25. On February 28, 2018, AE filed a "Response to Amended Schedule 14 A filed February 2, 2018" in a form 8-K with the SEC.  According to the client file GKN/Whalen produced to AE, GKN/Whalen substantially and materially assisted AE in preparing this response.  A true and correct copy of the February 28, 2018 Form 8-K is attached hereto as Exhibit E.  Among the issues addressed in the "Response to Amended Schedule 14 A filed February 2, 2018" are the stock issuances Farley authorized AE to make in February/March 2016 that were the subject of the Superius Litigation.

26. On March 2, 2018, Bradford T. Adamczyck, Jonathan R. Barcklow, Thomas C. Dearmin, John E. Schultz Jr., and Oak Tree Asset Management Ltd. filed Definitive Additional Materials in connection with the Definitive Consent Statement with the SEC.  A true and correct copy of the Definitive Additional Materials is attached hereto as Exhibit F.

27. These shareholder proxy solicitations sought to remove Farley for cause for, among other reasons, Farley's issuance to himself of 25 million AE shares and the issuance of millions of shares to others at $.001 per share.  This was the same conduct alleged against Farley in the Superius Litigation.

28. GKN and Whalen admit in paragraph 47 of their Complaint in the Related Action that the allegations raised in support of seeking removal of Farley were "essentially identical" to the allegations raised by AE shareholders in the Superius Litigation.

**C. Farley Retains GK to Represent AE's Interest in Proxy Solicitation**

29. AE is informed and believes, and thereon alleges, that at some point between January 18, 2018, and January 22, 2018, Farley called Whalen and asked whether GKN/Whalen would represent AE in response to the proxy solicitation. These discussions and negotiations occurred exclusively between Farley, on behalf of AE, and GKN/Whalen. No independent attorney representing AE was involved in these communications concerning GKN/Whalen's potential representation of AE. As a result of these negotiations, Farley, acting in his capacity as sole director and officer of AE, retained GKN/Whalen to represent AE's interest in connection with the proxy solicitation and GKN/Whalen accepted the representation. A true and correct copy of the January 23, 2018 GKN-AE engagement letter is attached hereto as Exhibit G.

30. While that letter was executed by "George Farley as Chief Executive Office Applied Energetics" on January 31, 2018, and dated January 23, 2018, GKN begun representing AE at least as early as January 19, 2018, as indicated in its billing statements. A copy of GKN/Whalen's January 2018 billing statement sent to AE is attached hereto as Exhibit H.

31. Because of GKN/Whalen's former representation of Farley in the Superius Litigation, and GKN/Whalen's continuing duties to Farley under NYRPC 1.9, there was a significant risk that GKN/Whalen's professional judgment on behalf of AE would be adversely affected. At no time did GKN/Whalen disclose to AE, in writing, the conflict of interest presented by its representation of Farley in the Superius Litigation and subsequently representing AE in the proxy solicitation concerning the very same conduct. At no time did AE waive GKN/Whalen's conflict in writing.

32. GKN/Whalen's conflict proved to be materially harmful to AE and its shareholders, and GKN/Whalen's professional judgment on behalf of AE was adversely impaired.  Had AE retained counsel in connection with the proxy solicitation who did not owe continuing duties of confidentiality and loyalty to Farley, AE would have had the benefit of unbiased and non-conflicted counsel to investigate and analyze the allegations made against Farley in the proxy solicitation materials.  Such unbiased and non-conflicted counsel would have concluded that Farley likely did breach his fiduciary duties to AE by issuing himself 25 million shares of stock, and 38 million shares of stock to third parties, for $0.001 per share, as found by the Delaware Court of Chancery, Vice Chancellor Tamika Montgomery-Reeves (now Justice of the Delaware Supreme Court) presiding, in her January 24, 2019 Memorandum Opinion.  Such an assessment by an unbiased and non-conflicted counsel would have supported the shareholders seeking to remove Farley for cause and, at a minimum, that the corporation, AE, should not take a position in connection with the proxy solicitation.  Yet, AE did take a position opposing the proxy solicitation and spent many thousands of dollars, primarily in fees to GKN/Whalen, in opposing the proxy solicitation, including preparing and filing a form 8-K with the SEC urging AE shareholders to vote against the resolutions urged in the proxy solicitation.

33. After GKN/Whalen agreed to the conflicted representation without written disclosure of their conflicts or obtaining a knowing waiver by a non-conflicted corporate representative who could waive the conflicts, GKN/Whalen materially assisted Farley in causing AE to oppose the proxy solicitation and violate Delaware law in doing so.

34. GKN/Whalen advised and assisted AE in preparing and filing an opposition to the proxy solicitation materials in the form of an 8-K filed with the SEC.  That 8-K, among other things, defended the propriety of Farley issuing himself 25 million shares of stock, and 38 million shares of stock to third parties, for $0.001 per share.

35. GKN/Whalen also advised and assisted Farley in repeatedly refusing lawful demands that AE provide the shareholders filing the proxy solicitation materials with a copy of AE's

shareholder list, as otherwise required by DGCL section 220(b)(1).  There was no good faith basis for this refusal, and GKN/Whalen knew AE was required to provide its shareholder list, yet aided and abetted Farley in stonewalling and denying these legitimate requests from AE shareholders.  This failure to comply with the law required the soliciting shareholders to expend substantial time and expense locating and contacting AE shareholders via other means, and substantially harmed all of AE's shareholders by depriving them of highly relevant information concerning their ownership of AE stock. AE ultimately reimbursed the (successful) soliciting shareholders for these expenses, thereby causing harm to AE as a result of Whalen/GKN's professional negligence.

**D.  GKN Negotiates with Farley to be Paid in AE Stock for its Representation of Farley and AE**

36. At the time Farley contacted GKN/Whalen about possibly representing AE in the proxy solicitation, GKN/Whalen claimed GKN had not been paid the fees it was owed from representing Farley in the Superius Litigation.  Between January 18, 2018, and Jan. 23, 2018, Farley, on behalf of AE, and GKN/Whalen negotiated and agreed that AE would pay GKN's unpaid bill for services rendered to Farley in the Superius Litigation in AE stock at a 50% discount to the then public trading price.  No independent attorney representing AE was involved in these negotiations.

37. At no time did GKN/Whalen disclose to AE the inherent conflict of interest of accepting an ownership interest in its corporate client, AE, in lieu of cash payment for fees, nor did GKN/Whalen advise AE in writing that seeking advice from independent counsel is desirable in such a transaction, nor did AE ever give its informed written consent to GKN/Whalen's role in the transaction including whether GKN/Whalen were representing AE's interest in the transaction.

38. GKN/Whalen's conflict in obtaining AE stock proved materially harmful to AE and its shareholders.  GKN/Whalen knew the circumstances under which they agreed to accept AE stock via an agreement negotiated with Farley came in the middle of a shareholder

proxy solicitation seeking to remove Farley.  GKN/Whalen knew that the proxy contest could succeed resulting in Farley's removal and replacement with new management likely adverse to Farley.  GKN/Farley's ownership of AE stock would then conflict with AE's pursuit of claims against Farley.  AE did file a lawsuit against Farley in the Delaware Court of Chancery, Case No. 2018-0489 (the "Farley Litigation").  GKN/Whalen represented Farley in the Farley Litigation, over AE's objection.  Although Vice Chancellor Montgomery-Reeves denied AE's motion to disqualify GKN/Whalen as untimely, she further stated on the record, "In denying the motion, I make no decision as to the merits of the claims, nor do I declare that GKN has no conflict of interest."

39. On January 22, 2018, Whalen sent Farley an invoice for the work GKN/Whalen performed in the Superius Litigation.  The invoice did not contain any detailed billing entries, but merely contained a lump sum number of $33,324.26.  In addition to the invoice, the communication included a summary of the law requiring AE to indemnify Farley for his defense in the Superius Litigation.  A copy of the January 22, 2018 email is attached hereto as Exhibit I.

40. On January 23, 2018, Farley emailed Stephen McCommon ("McCommon"), AE's accountant at the time, stating that GKN/Whalen had agreed to accept restricted AE shares, at a 50% discount from the public trading price, as payment for their representation of Farley in the Superius Litigation.  The email instructed McCommon to prepare a letter of intent to issue 1,074,968 shares to GKN/Whalen and stated that Mary O'Hara ("O'Hara") would issue the necessary opinion to the transfer agency.  A copy of the January 23, 2018 email is attached hereto as Exhibit J.  O'Hara was not involved in any of the negotiations between Farley and Whalen whereby Farley, on behalf of AE, and Whalen, on behalf of GKN, reached an agreement to pay GKN/Whalen's bill in full with AE stock and a 50% discount on the public trading price of AE's stock.

41. In so agreeing, Farley, on behalf of AE, and GKN/Whalen necessarily agreed that 100% of GKN/Whalen's claimed fees defending Farley in the Superius Litigation were

"reasonably incurred" and required to be paid by AE under DGCL 145(c)(1).
GKN/Whalen never advised Farley, or anyone else representing AE, that Farley was
conflicted in assessing whether GKN/Whalen's fees incurred in representing Farley were
"reasonably incurred" as Farley could potential be personally liable for any difference in
fees GKN/Whalen charged that AE did not compensate under its indemnity obligations.
GKN/Whalen were conflicted in representing AE in connection with negotiating their
own compensation for their prior services to Farley, individually.

42. GKN/Whalen negotiated directly with Farley, and never with O'Hara or any other person
representing AE, in reaching an agreement whereby AE would pay GKN/Whalen's fees
incurred in the Superius Litigation representing Farley, and GKN/Whalen's fees
representing AE, in AE stock at a 50% discount to the public trading price.  Farley and
GKN/Whalen simply advised O'Hara of their agreed-upon terms after the fact and asked
O'Hara to perform the limited service of issuing an opinion letter on the validity of the
issuance of the shares.  GKN/Whalen knew O'Hara was not representing AE "on the
transaction" within the meaning of NYRPC 1.8(a).  Had GKN/Whalen truly believed
O'Hara was representing AE in connection with the proposed stock-for-fees transaction,
GKN/Whalen would have negotiated exclusively with O'Hara pursuant to NYRPC
4.2(a).

43. GKN/Whalen and Farley negotiated and agreed to pay 100% of GKN/Farley's claimed
fees in the Superius Litigation, deemed "reasonably incurred," at a 50% discount to the
public trading price of AE's stock, in the middle of a proxy contest whereby AE
shareholders were seeking to remove Farley as an AE officer and director.  Thus, both
GKN/Whalen and Farley had incentives to maximize the amount of stock to be issued to
GKN/Whalen:  for GNK/Whalen, to get the most shares at the least price per share; for
Farley, to issue shares to friendly parties to potentially vote against the proxy contest and
save Farley's job and control of AE.  These incentives were directly contrary to AE's
interests in ensuring only those fees "reasonably incurred" were compensated and to get

the best price per share of its stock (assuming *arguendo* a stock-for-fees arrangement was properly negotiated and agreed upon, which it was not). GKN/Whalen never advised AE of these conflicts. AE never agreed to waive these conflicts.

44. Both GKN/Whalen and Farley knew that stock issued to GKN/Whalen could potentially be voted against the proxy solicitation as both GKN/Whalen and Farley contended, on multiple occasions, that the proxy solicitation materials the shareholder group had filed were inaccurate and/or incomplete and should be withdrawn and new proxy materials filed with the SEC. Doing so would likely establish a new record date for AE shareholders entitled to vote in the proxy solicitation that would include the shares issued to GKN/Whalen.

45. On January 23, 2018, Whalen sent an email to Farley, instructing Farley to transfer 60% of the shares to GKN and 40% of the shares to Whalen. A partially redacted copy of the January 23, 2018 email is attached hereto as Exhibit K.

46. On January 23, 2018, Farley forwarded the above referenced email to McCommon, instructing him to revise the letter of intent to reflect the instructions given by Whalen regarding the split of shares. A copy of the January 23, 2018 email is attached hereto as Exhibit K.

47. On January 23, 2018, notably before the month had ended, GKN/Whalen sent Farley an invoice for services thus far provided to AE in January 2018, in connection with the proxy solicitation. A copy of the January 23, 2018 email is attached hereto as Exhibit L.

48. Although GKN's January 23, 2018 engagement letter that Farley executed on behalf of AE did not consider a payment late unless not paid within 30 days of receipt of a billing statement, and although January was not over and no payment owed by AE under that engagement letter was late, GKN/Whalen and Farley also included GKN/Whalen's four days of billing for their representation of AE as part of the issuance of AE stock to GKN and Whalen. GKN/Whalen and Farley knew that this additional stock issuance to GKN/Whalen would occur during the proxy solicitation contest and could potentially be

voted in connection with the proxy solicitation.  Thus, again, both parties negotiating the transaction, Farley on behalf of AE and GKN/Whalen, had incentives to maximize the amount of shares to be issued to GKN/Whalen, and to issue them soon so they could potentially be voted in the ongoing proxy solicitation contest.  These interests were directly contrary to AE's interests.  GKN/Whalen never advised AE of these conflicts.  AE never agreed to waive these conflicts.

49. On January 24, 2018, Farley sent Henry Farrell ("Farrell"), an agent at Continental Stock Transfer & Trust Company ("Continental"), a letter of intent.  The letter instructed Continental to issue 1,242,710 AE shares, divided pursuant to an attached schedule, with a restrictive legend.  The attached schedule instructed 745,626 shares be issued to GKN and 497,084 shares be issued to Whalen.  A partially redacted copy of the letter of intent and attached schedule are attached hereto as Exhibit M.

50. On February 5, 2018, O'Hara sent an email to Whalen, reiterating the agreement reached between GKN/Whalen and Farley, on behalf of AE, to issue shares to GKN/Whalen at a 50% discount to the market value as of January 23, 2018.  O'Hara requested Whalen to send her an invoice to assist her completion of the opinion letter.  A copy of the February 5, 2018 email is attached hereto as Exhibit N.

51. On February 5, 2018, Whalen sent O'Hara an invoice for the work GKN/Whalen performed in the Superius Litigation.  Whalen further stated an invoice for the work performed on behalf of AE, in connection with the proxy solicitation, would follow.  A copy of the February 5, 2018 email is attached hereto as Exhibit O.

52. On February 5, 2018, Whalen sent O'Hara an invoice for the work performed on behalf of AE in the proxy solicitation matter.  A copy of the February 5, 2018 email and its accompanying attachment is attached hereto as Exhibit P.

53. On February 5, 2018, O'Hara sent Farrell an opinion letter regarding the issuance of AE shares to GKN/Whalen.  A copy of the February 5, 2018 email is attached hereto as Exhibit Q.

54. O'Hara's opinion letter narrowly expresses the opinion that the shares "have been duly authorized, validly issued, fully paid and non-assessable, as compensation for services rendered by" GKN/Whalen.  The opinion letter states that the shares may be "lawfully issued" pursuant to the instructions presented in the letter of intent dated January 24, 2018 from AE.  The opinion letter does not express an opinion as to the propriety of GKN/Whalen accepting shares as payment for their legal services rendered nor does it purport to address the fairness of such transaction.  To that point, the opinion letter expressly states that it "deals only with the specific legal issue or issues it explicitly addresses and does not address any other matter."  A copy of the opinion letter is attached hereto as Exhibit R.

55. O'Hara was not present at any conversation that took place between GKN/Whalen and Farley regarding the negotiation of the amount of GKN's fees to be paid, the price of shares, the number of shares to be issued to GKN/Whalen, or the fairness of such transaction.

56. O'Hara was not asked to, nor did she purport to, represent AE in the shares-for-fees transaction between AE and GKN/Whalen.

57. O'Hara's role in the issuance of AE's shares to GKN/Whalen, as evidenced by the above emails and Exhibit R, was strictly to provide an opinion of the legality of AE's issuance of shares from a corporate power perspective.  At no time did she represent, explicitly or implicitly, that she was evaluating the issuance of shares to GKN/Whalen pursuant to the NYRPC, the fairness of the transaction between AE and GKN/Whalen, or providing any other legal advice other than the narrow legal opinion addressed in her letter.  She did not, nor was she asked to, fulfil the role of independent counsel to AE as recommended by NYRPC 1.8(a)(2) when GKN/Whalen entered into a business transaction with a client.

58. On March 1, 2018, Farley emailed Farrell requesting he issue the AE shares to GKN/Whalen as provided for in the opinion letter and letter of intent.  A copy of the March 1, 2018 email is attached hereto as Exhibit S.

59. On March 1, 2018, Farrell notified Farley that Continental would not be able to issue the shares before a signed opinion letter had been received.  A copy of the March 1, 2018 email is attached hereto as Exhibit S.

60. On March 2, 2018, O'Hara sent Farrell a signed opinion letter.  A copy of the March 2, 2018 email is attached hereto as Exhibit T.

61. On March 2, 2018 Whalen emailed Farrell, requesting an update regarding when the share certificates would be sent to GKN/Whalen.  A copy of the March 2, 2018 emailed is attached hereto as Exhibit U.

62. On March 5, 2018, Whalen sent O'Hara an email, requesting that her firm send Farrell a signed opinion letter as soon as possible.  Whalen further expressed his urge to complete the transaction quickly "given the current state of things."  GKN/Whalen knew that "the current state of things" was that the proxy contest was on the verge of success in obtaining enough shareholder votes to remove Farley as an AE officer and director.  A copy of the March 5, 2018 email is attached hereto as Exhibit U.

63. On March 8, 2018, Continental issued AE stock certificates to GKN/Whalen, 745,626 shares to GKN and 497,084 shares to Whalen.

64. Ultimately, on March 8, 2018, AE received the written consents (the "Written Consents") of the Company's stockholders representing more than 58% of the outstanding shares of the Company's common stock, par value $0.001 per share (the "Common Stock"), in accordance with DGCL section 228, approving the following stockholder proposals (the "Stockholder Proposals"), which became effective on March 8, 2018

> 1. Approval of the following resolution: RESOLVED, that any provision of the Amended and Restated By-Laws (the "Bylaws") of the Company in effect as of immediately prior to the adoption of this resolution that was not included in the Bylaws filed by the Company with the Securities and Exchange Commission (the "SEC") as an exhibit to its Quarterly Report on Form 10-Q on August 9, 2007 (the last date of reported changes to the Bylaws) (other than any amendment to the Bylaws adopted by the stockholders of the Company), be and is hereby repealed;

2. The removal, with cause, of George P. Farley from the Company's Board of Directors (the "Board");

3. The election of Bradford T. Adamczyk to serve as a director on the Board for a term of three years and until his successor is duly elected and qualified; and

4. The election of Jonathan R. Barcklow to serve as a director on the Board for a term of two years and Thomas C. Dearmin to serve as a director on the Board for a term of one year and, in each case, until their respective successors are duly elected and qualified.

65. GKN/Whalen continued to represent AE in connection with the ongoing shareholders' proxy solicitation from January 19, 2018, to March 11, 2018.

66. On or about March 11, 2018, Thomas Dearmin, AE's new CEO, sent an email to Whalen terminating GKN/Whalen's services.  A partially redacted copy of the March 11, 2018 email is attached hereto as Exhibit V.

## FIRST CAUSE OF ACTION

### (Legal Malpractice against All Defendants)

67. AE incorporates by reference each of the preceding allegations as if set forth in full herein.

68. GKN/Whalen were retained as attorneys for AE on or about January 19, 2018.

69. As AE's attorneys, GKN/Whalen owed AE a duty to exercise the degree of care, skill, and diligence commonly possessed and exercised by members of the legal community.

70. As AE's attorneys, GKN/Whalen owed AE fiduciary duties of the utmost good faith.

71. Pursuant to this duty, as AE's attorneys, GKN/Whalen owed a duty to AE to, among other things, act with reasonable competence and diligence.

72. Pursuant to this fiduciary duty, as AE's attorneys, GKN/Whalen owed a duty to AE to, among other things, avoid conflicts of interest.

73. Pursuant to this fiduciary duty, as AE's attorneys, GKN/Whalen owed a duty to AE to, among other things, reasonably advance a client's lawful objective.

74. Pursuant to this fiduciary duty, as AE's attorneys, GKN/Whalen were required to place AE's interest above their own.

75. GKN/Whalen failed to exercise that degree of care, competence, and diligence in its representation of AE by failing to disclose all the conflicts of interest inherent in their representation of AE due to their past representation of Farley in the Superius Litigation. In thereafter representing AE, GKN/Whalen did not advance AE's interests based upon their own independent judgment, but advanced Farley's individual interests in opposing the proxy solicitation.  Essentially, GKN/Whalen acted as Farley's personal attorneys, not as attorneys for AE.

76. GKN/Whalen failed to exercise that degree of care, competence, and diligence in entering into a business transaction with AE, its client, that was not fair or reasonable to AE.

77. GKN and Whalen failed to exercise that degree of care, competence, and diligence in entering into a business transaction with AE, its client, without first advising AE of the desirability of independent legal advice regarding the transaction and failing to obtain written informed consent to the essential terms of the transaction and GKN/Whalen's role in the transaction.

78. GKN/Whalen failed to exercise that degree of care, competence, and diligence by failing to avoid the conflicts of interests present in both the representation of AE in the proxy solicitation matter and the acceptance of AE shares as payment for its representation.

79. No reasonable attorney would determine that it was appropriate to:

a. Agree to represent AE's interest in a proxy solicitation seeking to remove Farley as an officer and director for cause after representing Farley individually in the Superius Litigation regarding the same exact alleged conduct.

   i. It was in Farley's best interest in the Superius Litigation to defend himself against the misconduct.  However, it was in AE's best interest in the proxy solicitation to determine the validity of the alleged misconduct independently of Farley's interest, to obtain the services of proper and

ethical management as selected by the shareholders, and to provide AE with the ability to investigate and potentially seek compensation from Farley for any harm caused by his alleged misconduct.  Therefore, these interests were directly adverse to each other.  GKN/Whalen could not have competently and diligently asserted each position with no conflicts of interest.  Such representation resulted in a non-consentable conflict of interest.

b.  Fail to inform AE in writing of the inherent conflict of interest in such representation.

c.  Fail to inform AE that representation would be inappropriate because the conflict of interest cannot be cured by consent because Farley, as the sole director of AE and the one charged with having an adverse interest, was unable to provide adequate consent.

d.  Fail to obtain written consent by an individual who could properly consent to the representation despite the conflict of interest.

e.  Accept as payment AE stock in lieu of cash despite its inherent unfairness to AE.

f.  Fail to explain the terms of the transaction to an appropriate representative of AE and fail to ensure such terms were entirely fair to AE.

g.  Fail to obtain an independent valuation of the AE shares before accepting shares at half the public trading price at the time of the agreement.

h.  Fail to inform and advise AE, in writing, of the desirability of seeking the advice of independent counsel on the transaction of issuing AE stock as payment for legal services and the financial terms of the transaction.

i.  Fail to give AE reasonable opportunity to seek such independent legal advice from independent counsel.

j.  Fail to inform AE of the inherent conflict in receiving AE shares as payment considering the issuance of shares would result in GKN/Whalen becoming AE

shareholders, with all the rights of a shareholder, and thus would have a personal and business interest in the outcome of the proxy solicitation.

k.  Fail to obtain informed written consent as to the transaction and GKN/Whalen's role in the transaction.

l.  Knowingly accept an amount of shares that was grossly disproportionate to the value of legal services provided to AE.

m.  Knowingly enter a fee agreement that accepted as payment an excessive fee for the legal services provided.

80. As a direct and proximate result of each of GKN/Whalen's failure to exercise the required care, skill, and diligence, GKN/Whalen were issued a total of 1,242,711 of AE shares at below market value and caused other monetary harm to AE, in an amount according to proof, but exceeding $75,000.

81. As a direct and proximate result of each of GKN/Whalen's failure to exercise the required care, skill, and diligence, AE has been required to incur substantial legal expenses in rescinding the shares issued to GKN/Whalen.

82. As a direct and proximate result of each of GKN/Whalen's failure to exercise the required care, skill, and diligence, and violation of NYRPC rules 1.7 and 1.8 as described herein, GKN/Whalen are not entitled to any fees for any services rendered to AE.

### SECOND CAUSE OF ACTION

**(Rescission and Restitution/Recoupment for Violations of New York Rules of Professional Conduct 1.5, 1.7 and 1.8 against all Defendants)**

83. AE incorporates by reference each of the preceding allegations as if set forth in full herein.

84. GKN/Whalen served as attorneys for AE in responding to a shareholder proxy solicitation filed with the SEC on or about January 18, 2018.

85. As attorneys, GKN/Whalen were bound by the NYRPC, including NYRPC rules 1.5, 1.7, and 1.8.

86. GKN/Whalen had an affirmative duty to not engage in the representation of a client if a reasonable lawyer would conclude either that the representation of the client will involve the lawyer in representing different interests or there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interest.  However, such representation is permissible if four conditions are satisfied: 1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation despite the conflict; 2) the representation is not prohibited by law; 3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation; and 4) each affected client gives informed consent, confirmed in writing.

87. GKN/Whalen had a duty to disclose any conflicts of interest to AE in writing.

88. GKN/Whalen had a duty to obtain informed consent, confirmed in writing, by an individual who was sufficiently disinterested in the conflict to agree to GKN/Whalen's representation of AE.

89. A reasonable lawyer would conclude that GKN/Whalen's representation of AE in the proxy solicitation matter after representing Farley individually in the Superius Litigation, involving the same alleged conduct against Farley, posed a significant risk that the lawyer's professional judgment on behalf of AE would be adversely affected by the lawyer's responsibilities to Farley, a former client.

90. A reasonable lawyer would have concluded that, under the facts and circumstances described herein, accepting AE shares as payment for past and future fees, thereby becoming an AE shareholder with all the rights associated with such position, posed a significant risk that the lawyer's professional judgment on behalf of AE would be

adversely affected by the lawyer's own personal and financial interest as an AE shareholder.

91. A reasonable lawyer in the same situation as GKN/Whalen would not reasonably believe that the lawyer would be able to provide competent and diligent representation to AE despite the conflicts of interest present in both the lawyers responsibilities owed to a former client, and business and personal interests created by the business transaction entered into with AE.

92. GKN/Whalen engaged in the representation of AE in connection with the proxy solicitation matter despite the conflict of interest caused by their prior representation of Farley in the Superius Litigation.  GKN/Whalen did not disclose this conflict of interest to AE in writing.  AE never waived this conflict in writing.

93. GKN and Whalen each accepted AE shares as payment for services despite the conflicts of interest it created in becoming AE shareholders and thus having a personal and financial interest in the outcome of the proxy solicitation matter.

94. GKN/Whalen did not disclose the conflicts of interest that arose out of its acceptance of AE shares as payment for their services.  It was in GKN/Whalen's best interest to negotiate the lowest per share price possible in order to obtain the greatest number of shares as payment for the fees it claimed AE owed them.  GKN/Whalen also knew it was in Farley's personal interests to issue GKN/Whalen excessive shares so those shares might be voted against the resolutions proposed in the proxy solicitation to save Farley's job and control of AE.  However, at no time was this conflict communicated to AE in writing.

95. GKN/Whalen did not obtain informed consent, confirmed in writing, from an AE representative who was sufficiently disinterested in either of the conflicts of interest to consent thereto.

96. GKN/Whalen's conduct as described herein was in violation of NYRPC 1.7.

97. Violations of NYRPC 1.7 permit the client to rescind the transaction.

98. As a result of GKN/Whalen's violation of NYRPC 1.7, AE elects to rescind the transaction and seeks a return of the stock issued as payment for GKN/Whalen's representation of AE.

99. As attorneys, GKN/Whalen were bound to follow NYRPC 1.8.

100. GKN/Whalen had a duty not to enter into a business transaction with a client, including accepting shares of stock as payment for services, unless the transaction was fair and reasonable; the client was advised in writing of the desirability of seeking advice of independent counsel; the client was given reasonable opportunity to seek such advice; and the client gave informed written consent as to the essential terms and the lawyers role in the transaction.

101. GKN/Whalen entered into a business transaction with AE while representing AE by accepting AE shares as payment for services rendered to Farley and AE.

102. The business transaction between AE and GKN/Whalen was not fair and reasonable to AE.

103. GKN/Whalen did not ensure the issuance of the AE shares to GKN/Whalen below market value was fair and reasonable to AE and AE's shareholders.  Rather, GKN/Whalen negotiated exclusively with Farley to obtain payment of 100% of their claimed fees in the Superius Litigation at a 50% discount to the then public trading price. GKN/Whalen negotiated this agreement knowing Farley had personal financial incentives, directly contrary to AE's interests, to cause AE to pay 100% of the fees GKN/Whalen claimed were owed for the Superius Litigation and to issue more shares at a lower per-share price to maximize the amount of AE shares issued to those friendly to Farley and expected to vote against the resolutions proposed in the proxy solicitation.

104. GKN/Whalen did not disclose to AE the conflicts of interest created by their negotiations and acceptance of AE stock as payment for services rendered to AE and Farley.

105.     GKN/Whalen did not advise AE in writing of the desirability of obtaining advice from independent counsel in connection with the stock-for-fees transaction.

106.     GKN/Whalen did not allow for a reasonable opportunity for AE to seek advice from independent counsel concerning the stock-for-fees transaction.

107.     GKN/Whalen did not obtain an independent valuation of the AE shares before accepting such shares, at a price negotiated exclusively by GKN/Whalen and Farley, when both sides of the transaction had financial incentives to issue the maximum amount of stock at the lowest per-share price, which interests were directly contrary to AE's interests.

108.     GKN/Whalen did not provide any billing statements supporting their claim for $33,324.26 in legal fees they charged for their representation of Farley in the Superius Litigation.  GKN/Whalen never substantiated to AE that the $33,324.26 in legal fees they charged to Farley in the Superius Litigation were "actually and reasonably incurred." GKN/Whalen knew that Farley had a conflict of interest in determining, on AE's behalf, whether the $33,324.26 in legal fees GKN/Whalen charged to Farley in the Superius Litigation were "actually and reasonably incurred."

109.     GKN/Whalen's conduct described herein was in violation of NYRPC 1.8.

110.     Violations of NYRPC 1.8 permit the client to void the transaction.

111.     As a result of GKN/Whalen's violation of NYRPC 1.8, AE elects to void the stock issuance to GKN/Whalen.

112.     As attorneys, GKN/Whalen were bound to follow NYRPC 1.5.

113.     Pursuant to this rule, GKN/Whalen had a duty not to make an agreement for, charge, or collect an excessive fee from AE for its legal services.

114.     GKN/Whalen served as attorneys for Farley in the Superius Litigation, of which AE was required to indemnify Farley for legal fees incurred in connection with such representation.

115.      GKN/Whalen billed $33,324.26 in legal fees for its representation of Farley in the Superius Litigation.

116.      GKN/Whalen billed $5,200 in legal fees for the 10.2 hours of work performed on the proxy solicitation matter for AE up to the time of the issuance.

117.      GKN/Whalen accepted 1,242,711 shares of AE stock in exchange for the work they performed as counsel for Farley in the Superius Litigation and 10.2 hours of work they performed in connection with the proxy solicitation on behalf of AE at 50% of the stock's then public trading price.

118.      On March 8, 2018, the day of issuance, AE stock opened and closed at $0.0752 per share. Thus, the value of AE shares issued to GKN/Whalen on the day of issuance was $93,451.86.

119.      $93,451.86 is an excessive fee for $38,524.26 worth of work.

120.      As a result of GKN/Whalen's violation of NYRPC 1.5, GKN and Whalen must return the excessive fee to AE.

121.      "Under New York law, a client has an affirmative cause of action for rescission of [a fee agreement that is invalid under the Code of Professional Responsibility] and restitution or recoupment of legal fees paid in excess of the reasonable amount due to the attorney for services actually rendered." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp, 2d 363, 380 (S.D.N.Y. 2004) (quoting *Levisohn, Lerner, Berger, & Langsam v. Medical Taping Sys., Inc.*, 20 F. Supp. 2d 645, 650 (S.D.N.Y. 1998)) (alterations original).

122.      By engaging in the acts and omissions above, GKN/Whalen violated NYRPC rules 1.5, 1.7, and 1.8.

123.      As such, the fee agreement between GKN/Whalen and AE is voidable at the election of the client, AE.  AE has elected to void and rescind the fee agreement with GKN/Whalen, but GKN/Whalen have refused to honor the rescission and refused to return the AE shares to AE.

124.     As a result of procuring the fee agreement with AE in violation of NYRPC rules 1.5, 1.7, and 1.8, AE elects to rescind the issuance of shares of AE stock to GKN and Whalen as payment for their legal services.

### PRAYER FOR RELIEF

WHEREFORE, AE respectfully prays for relief against GKN and Whalen, and each of them, as follows:

1. For breach of the fiduciary duty owed to AE, rescission of the issuance and return of all 1,242,711 shares of AE stock used to GKN and Whalen, and for monetary damages according to proof.

2. For violation of NYRPC 1.7, rescission of the issuance and return of all 1,242,711 shares of AE stock used to GKN and Whalen.

3. For violation of NYRPC 1.8, rescission of the issuance and return of all 1,242,711 shares of AE stock used to GKN and Whalen.

4. For violation of NYRPC 1.5, rescission of the issuance and return of all 1,242,711 shares of AE stock used to GKN and Whalen.

5. On all causes of action, for costs of suit and such other and further relief as the Court finds just and equitable.

DATED:  January 15, 2021        **BOND, SCHOENECK & KING, PLLC**

Office and P.O. Box Address
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Email: jfellows@bsk.com
        bsheehan@bsk.com

By: _____
        Jonathan B. Fellows, Esq. (Jf8629)
        Brendan M. Sheehan, Esq. (Bs4708)